at all, or arguments not to exceed 15 minutes per side. Mr. Casey Lott, for the appellate. May it please the court, I'm Casey Lott. I represent Susan Durham and her three children who are the wrongful death beneficiaries of Christopher Durham. I'm here to speak on behalf  In this case, the District Court held that Susan Durham's complaint did not accuse Gus Losleben, the firefighter who was driving the fire truck in this case, of conduct which could properly be characterized as arbitrary or conscious shocking in the constitutional sense. In doing so, the District Court declared that the Seventh Circuit cases of Hill v. Shelby and the Tenth Circuit case of Green v. Post were persuasive in holding essentially that in order to prove conscious shocking behavior, Susan Durham was required to show that Losleben intended to harm her husband, Christopher Durham. And respectfully, your honors, I believe that's a misstatement of the law. The leading case on the standard of culpability in substantive due process cases based on executive action is County of Sacramento v. Lewis, a United States Supreme Court case from 1998. In that case, a boy that was killed in a high-speed car chase with the sheriff's deputy or the family of that boy brought an action against the sheriff's deputy and other law enforcement officers and entities. In that case, the U.S. Supreme Court said that intent is not always required, but that the middle states of culpability such as recklessness, gross negligence, and deliberate indifference may or may not be conscious shocking depending on the context. But it is conscious shocking is the standard, correct? Correct, your honor. And so can I just ask, so the facts here are that he crossed the center line and he was speeding in a non-emergency situation, right? Yes, your honor. In essence. I mean, doesn't that happen every day in America? Why is that conscious shocking? Well, I think in the broader context, your honor, this was a very narrow road, a rural road that was so narrow that it didn't even have center lines. And he knows he's in a non-emergency situation. They've radioed and said we have the situation under control. They didn't need him at the scene. He had an opportunity to deliberate about not only the route he would take, but the method and manner in which he would take it. Did he have his lights on? I don't believe so, your honor. That has not been established through discovery, but we don't think so. You say there was no center line? That's correct. On the road? What was the speed limit? My recollection is 35. And how fast was he going? Your honor, I don't want to mislead the court. I don't recall off the top of my head, but it was excessive. Can you give us a ballpark of excessive? It's not in the complaint. Okay. It's not alleged in the complaint? Your honor, it is in the record somewhere. But my recollection is almost double. Okay. Was this summary judgment or was this a dismissal for failure to state a claim? Failure to state a claim under 12B. So we're supposed to look only at the complaint, right? That's correct. And the complaint does not provide a speed limit? Your honor, what the complaint does say is that he was operating at an excessive rate of speed. Okay. And he does have an independent and adequate, or I'm sorry, your clients have an independent and adequate state remedy, correct? They did sue in state court. There was supplemental jurisdiction and they didn't exercise it. So those are in state court. That's correct. Those claims were remanded to state court. And you can recover in state court? I don't think adequate is a fair statement. But, yes, we can recover under the Tennessee Governmental Act. Why not adequate? Explain that to me just briefly. Well, I'm sure you know where I'm going with this, your honor. But there's a $300,000 hard cap under the Tort Claims Act. In Tennessee? In Tennessee. Because of the wisdom of the government of Tennessee. Yes, your honor. Your honor, in the county of Sacramento v. Lewis case, which is the case from the U.S. Supreme Court that is most directly on point with the issues in this case, the court there held that these acts in the middle that are something more than negligence in the area of gross negligence or recklessness, but there's something less than intent to harm. Those are called the middle states of culpability. And they said when courts are considering whether those middle states of culpability should amount to conscious, shocking behavior under Section 1983, that courts should consider whether the defendants had an opportunity to deliberate. And I think the most telling quote from that case is where the court said, quote, when such extended opportunities to do better are teamed with protracted failures to even care, indifference is truly shocking. And I think that's the very definition of deliberate indifference, and that's exactly what we've alleged has happened here. Let me explain to you what I'm struggling with. On the facts alleged in the complaint, it's, as you said, excessive speed. Really, there's no center line to cross, even though you allege he crosses center, right? Let's get rid of line. Maybe I'd put that in. I'm sorry. I guess the trouble I have is I see it every day, so I wonder how it's conscious shocking. Does that make sense? Explain to me why it's something more than what we see every day. Absolutely, Your Honor. That's fair. And this court has held that in those middle ground situations in Hunt v. Sycamore, that there are three factors that the court should consider whether determining the type of conduct that you described is conscious shocking. And I think an application of those factors leads to the conclusion that it was conscious shocking under these circumstances. One of the Hunt factors is the voluntariness of the relationship between the government and the plaintiff, especially where the plaintiff was involuntarily in government custody or was he voluntarily a government employee. Here, our decedent was not in government custody, and he had no voluntary or involuntary relationship with Hardin County or this governmental entity. The second Hunt factor is whether the executive actor was required to act in haste or had time for deliberation. And I think the time for deliberation is what makes this so conscious shocking. They radioed him. They said, we have it under control. It's not an emergency situation. We don't need you here. He had time to think about his route. He had time to deliberate about how he would drive. He's in a very heavy loaded water truck, and that's something that you don't see every day. Sure, people go faster than they should on streets every day, but not in a heavily fully loaded water truck on a narrow rural road like this. He knew there was no way that he could keep that large, wide, heavily loaded fire truck on his side of the road, especially at the rate of speed that he was traveling. He knew it. He had an opportunity to deliberate about it, and he recklessly disregarded that risk to everyone's safety. The third hunt factor is whether the government actor was pursuing a legitimate governmental purpose. And again, he was not. They radioed and said they had the situation under control. It was not an emergency situation. There was no need for him to be driving in the manner that he was driving. The district court, I think, tellingly, and the defendants in their brief, don't even address the hunt factors that this court said should be addressed in every middle ground case. And we respectfully request that this court at least address those factors. Why isn't this just negligence? I mean, that's what it sounds like to me. I mean, all those factors, I understand what you have to do and you're trying to do, and don't take this as a criticism, but I add those factors up and I say that's an ordinary negligence case. I think it amounts to more than that, Your Honor. I'm certainly not going to argue with you. No, don't, but explain to me why. Sure. I think all of those, I think if all you had was he was speeding, all right, that's negligence. If all you had was he crossed the center line, well, that's negligence. But you have the fact that he's in a fire truck on this very narrow road, a really wide, large vehicle that's fully loaded with water. It's heavy. It's difficult to navigate. Is all that in the complaint? It should be, Your Honor. I mean, maybe not in the way that I just stated it, but I would also like to point out, Your Honor, that we did ask the district court for an opportunity to amend if they felt that our allegations were insufficient, and the district court didn't even address giving us the opportunity to amend. Wait, can we go back to that for a second? And I'm sorry that I can't remember. Did you ask the district court for an opportunity to amend before you responded to the motion to dismiss, or did you respond? I believe it was simultaneously with our response. First of all, we believe that the allegations in the complaint are sufficient to pass muster and get us to the discovery stage. But if the court were to disagree with that, we would like the court to afford us the opportunity to amend that complaint, and we weren't afforded that opportunity. Did you indicate how you wanted to amend it, or was it just that you would amend if you were given the opportunity? Your Honor, I don't independently recall, but I think that we just asked for the opportunity to amend. I don't think we got into specific, because we think that our complaint is sufficient, but we certainly could be more specific with the factual allegations if given the opportunity. This may be me, but all I remember is the three facts. I said at the beginning, but I could be wrong. You could have all those others in there. You don't have it with you, do you, that you can check? No. I don't, Your Honor. I apologize. That's all right. Thank you. Go ahead. So if you had simply facts that included gross negligence, would that be conscience-shocking? I think it's a case-by-case basis. What the case law says is that what may be conscience-shocking, gross negligence, that may be conscience-shocking in one context may not be conscience-shocking in another. I personally think it's a jury question. It's certainly something that should not be decided based on the four corners of the complaint. So you would let any gross negligence case go to a jury? I'm not saying that, Your Honor, but I think gross negligence cases should at least be afforded the opportunity to conduct discovery. We only know what we've been able to uncover without the opportunity. They can't, right? But the district court has to determine, or we have to determine, whoever, whether gross negligence amounts to conscience-shocking to let it go. Correct? Because that's a question of law, really. Your Honor, it is. I think it's a question of law that's more appropriate for summary judgment, and I think most of the cases that are cited by the defense, you can see, were decided on summary judgment. They may have started out as motions to dismiss, but the record was supplemented with facts outside the four corners. But a lot of times that's because people don't move to dismiss and or the complaint includes sufficient facts, and then they're decided on summary judgment once those facts are developed. That may very well be true, Your Honor, but I think based on the four corners of the complaint, I don't think you can compare these summary judgment cases to a motion to dismiss case. I think they're two different standards. Thank you. And I see your red light is on. We've taken you beyond your time. Thank you. Thank you, Your Honor. May it please the Court, my name is Austin Stokes. I'm here on behalf of the Applee-Hardin County, Tennessee, and the individual actor, Gus Lasley. We are asking the Court to affirm the district court's order dismissing the claims against the county,  and we're also asking the Court to affirm the order dismissing the claims against the individual actor for a failure to state a claim under the substantive due process clause of the 14th Amendment. Because we've been focusing on the substantive due process claim, why isn't this complaint, if you look at paragraph 11 and you look at paragraph 22, why isn't this enough to establish for purposes of a motion to dismiss? Yes, Your Honor. For purposes of a motion to dismiss, I want to be very clear that we should be sticking to the four corners of the document. And the courts have been very clear, this court has, that the substantive due process clause of the 14th Amendment is to protect governmental actions from being oppressive. The Supreme Court has warned that there are limited guideposts, limited areas, and that this concept should not bleed over into other protected interests. To answer your question, Your Honor, there are no actual real facts that would plead getting into this shocking the conscious. I believe the judge was asking what was in the complaint, and what we know that was in the complaint is that the driver was speeding, that he failed to travel in his proper lane, that he failed to maintain a proper lookout, and was responding to a call, albeit not an emergency call. That has not reached the conscious shocking level. As the Constitution, I mean, as the Supreme Court has explained, the Constitution deals with large concerns of the governors, and the governor does not purport. In your view, could there ever be a fire truck being driven in a way that would be conscience shocking? And if so, like what would be different from that hypothetical from this case? Yes, Your Honor. This court has even said that the conscious shocking, there is no exact point on the map. We know it's not mere negligence, and we know that it tends to go through the intent to harm. It is a case-by-case basis. However, on the four corners of the document, I think the best way to look at it is other cases that I've found that it shocks the conscious versus other cases that it has not. The district court looked at the Hill v. Shoeb case and found that it was not conscious shocking. In that case, it was a police officer. He was on duty. He was responding to a call. It was not an emergency call. He was speeding, going excessive over the speed limit. He drove through a red light, striking and killing another driver. So the facts that you outlined, other than the driving through a red light, were identical to the facts in this case. This case says that it was an excessive rate of speed and driving over into the decedent Durham's lane. So why does it matter whether you go through a red light or you cross over into the opposing driver's lane? Excuse me, Your Honor. I must have misstated. That case, the court found that it was not conscious shocking. And to add to that, he did not have his sirens. The police officer did not have his sirens on, did not have his flashing lights on, and did not have his headlights on, even though it was after midnight. And was that a motion to dismiss? That was on a motion to dismiss, Your Honor. As opposed to summary judgment. That is correct. And the court looked at that, and they looked at it, and they said this was mere negligence. There was a severe injury. The outcome was severe. However, the acts and the intent of the officer was not conscious shocking. It wasn't reckless. It wasn't deliberate and indifferent. And it was not intended to harm. On the other side, the Browder v. Casas case, and that's cited in plaintiff's brief in the 10th Circuit, you were asking me what could actually rise to that substantial burden. And in this case, the plaintiffs pled that the officer was not on duty, was not responding to a call. He was leaving his significant other's house, driving excessive speeds, ran through at least 10 intersections, red lights, and then finally fatally struck someone. And the court looked at that and said you weren't on duty. He was driving on city streets at 66 miles an hour. That's correct. The average of 66 miles an hour. So we don't know if it was even more than that at some point. Is there anything alleged in this complaint as to the many miles that the person was driving? No, there's not. I think in that Browder case it's alleged it was 8.8 miles. Yes, Your Honor. And there was no allegations in this complaint of how long they were traveling, the speed limit. It blanketly states excessive speed but gives no actual facts. And to that point, in the Browder case, the court actually looked at the officer's intent and his conduct prior to the fatal collision and the complaint alleged that the officer saw the light where the fatal strike actually occurred. And instead of slowing down, consciously pressed the gas to get through the light. And he was ultimately charged with reckless vehicular homicide. And that was not alleged in this complaint. Again, this court has followed the Supreme Court's conscious shocking analysis. Gross negligence, conscious shocking. I think I don't believe it would get to that, although the courts say that it is a case-by-case basis. Most of the courts look at that and look at the factors of the actual complaint, look at the factors of the actual case. So to blanketly state no, yes, but under most of the cases that I've seen, no, they're not. Gross negligence was not saying he's speeding but he's headed to a call. It's not an emergency call. He's on duty. That wouldn't reach the conscious shocking. The courts have said there has to be egregious conduct alleged. There has to be aggravating factors. And most of those have to do with either off-duty or intoxicated, things such as that, things that are egregious and can be said to arbitrary in the constitutional sense. Do you agree that the Hunt v. Sycamore factors are the factors that we should analyze? Yes, Your Honor. In looking at those factors, that case was a little bit different. It had to do with the school board placing an individual in harm's way, almost creating harm. In this case, I don't think there's anything in the Sixth Circuit that actually is spot on in this case. I think the district court did a great job of looking elsewhere. Because it's a case-by-case basis, I think you could look at other cases that look like that if that makes sense. So under Hunt, as your opponent laid out the factors, the second factor, did the government employee have time to reflect? And your opponent says, yes, he did have time to reflect. Is that analysis the correct way to think about that factor? No, Your Honor. I don't believe so respectfully. I think that, one, no intent was – no facts as to the intent were alleged in the complaint. Again, I think our ballpark is the complaint. And when courts have looked at intent, it looks more toward the Browder decision, looking at he sold the line. Well, there is this allegation in the complaint that Los Lieben knew that the call to which he was responding did not require him to drive the truck down this road at an excessive rate of speed. So it is suggesting that, arguably, that there was time to reflect, no? No, Your Honor. I don't believe so because I don't think that it's – you can generally just slap an allegation on that. He knew that driving fast was dangerous. I don't think that reaches the conscious shocking level. I think it is the officer off-duty or intoxicated driving at an excessive speed sees the red light or sees an oncoming car and doesn't swerve back into his lane, that has time to actually think, and that's just not here in this case. And other circuits have used this same analysis to dispose of car wreck cases. And a lot of them follow Parrott v. Taylor as a Supreme Court case that primarily deals with procedural due process. However, they look at the substantive due process concepts, and they explain that they disfavor a notion that any party who is involved in nothing more than a mere car wreck could bring in 1983 action against the governmental actor. They say they don't want the 14th Amendment substantive due process to become a font of tort law and specifically explain that the draft is – What case are you talking about now? Parrott v. Taylor. So Parrott, right, remind me, it looked at whether there was an independent and adequate state remedy. And that's completely correct, Your Honor. Is there here? How do we determine that if we were to import Parrott into this concept? Two phases. Really, Parrott is a procedural due process, and that hasn't been alleged here. Right. No, no, no. I understand. But there's some argument that even when analyzing this, we should look first if there's an independent and adequate state remedy. Sure. Here there was an independent remedy, and as your opponent said, there's a real question whether it's adequate. Your Honor, that's been left up to the Tennessee State Law and Tennessee Congress, and under the Governmental Tort Liability Act, there is a cap on damages. However, that hasn't been challenged, and that's good law. I mean, that is by the book. And so your argument is if Tennessee sets it, it's adequate? Yes, Your Honor. I believe so. You said it was $10,000 for death of an innocent civilian. I think that's getting into the dangerous fields of hypotheticals. However, I think that's the Tennessee legislature. I think that's the state law remedies for- Yeah, but we have to decide is it adequate, right? Right, Your Honor. And I believe that $1 is a little bit different than a $300,000 or a $700,000 cap for the main, for all the property damage and everything combined. And that, respectfully, is not before this court has been remanded. So I don't believe, looking at Parrott, to come back to your question, I think this is the essence of when they said not really the holding of the case, but saying we would disfavor this from allowing this to go on because we just don't think the 14th Amendment, the drafters wanted the 14th Amendment to come into our society on this basis. Ultimately- So like a conscience-shocking example would be if there was a tape that somehow the plaintiff had obtained where the driver, in all the other facts being the same, said, aha, I'm going to ram that car or I'm going to see if I can get him to go off the road. And then the accident happens and everything else is the same. So that would be conscience-shocking, wouldn't it? Yes, Your Honor, I believe that would be conscience-shocking. Would it be if the plaintiff alleged that he swerved at him? In other words, he's driving down the road at a high rate of speed, minding he's in his own lane, and he swerves at him. Would that be conscience-shocking? It would be a case-by-case basis. However, if there were certain facts in the complaint, again, in the four corners of the complaint- I'm giving you the same exact complaint we have here, but the allegation is he swerves at him instead of he just crosses. Conscience-shocking? Your Honor, I believe that under Sacramento v. Lewis, that if he's intending to harm, I believe that reaches the level of conscience- That would be evidence of intent to harm that would satisfy a motion to dismiss. Yes, Your Honor, I believe so. If we have intent to harm, if we reach the far end of the spectrum where someone's going to be criminally charged for vehicular assault or killing someone with intent, I believe that does reach the conscience-shocking level. Another case in the Fifth Circuit that talks about this was a police officer that was coming to a drug bus, coming to back him up, and it was not an emergency call. However, he was on duty, responding, ran through a red light. The complaint alleged that he was going at an excessive rate of speed, and he fatally struck a pedestrian as he swerved around a car. The court said not conscience-shocking. He's on duty. He's headed to a call, albeit not an emergency call. There's no other aggravating factors. There's no egregious conduct. And for that reason, the court said this doesn't reach that deliberate indifference, doesn't really reach the intent to harm case. Isn't there a difficulty in a case like this one where you have both of the drivers die at the scene, right, or in the accident? So there's no ability to get any testimony or any even discussion from them. Am I correct about that, that they died at the scene? Yes, Your Honor. Of course, we have to – but let's assume that fact, that they die at the scene. We can go beyond assume. I believe Mr. Lott alleged that in the complaint, and that is the case in this case. So the basic problem that I'm asking you to address is how can you put more in a complaint? If the two drivers are dead, without having some kind of discovery, can you – in other words, as an officer of the court, you have to allege things that you know or have reason to believe are true in the complaint. Later on, there's a Tennessee Bureau of something, investigation, evaluation of what happens. Maybe there are coroner reports and so forth. Are you saying you should wait to file your complaint until you have that information and that that information is available without discovery? What I'm trying to get at is how do you put things in your complaint if you don't have the benefit of discovery that will satisfy your position? Yes, Your Honor. I believe as an officer of the court, you have to allege what you know. However, that's why we didn't get to really talk about the statute of limitations issue, but that's why you get a year under Tennessee law in 1983 cases to do your investigation, to do your information requests, to do other matters, and to be able to apply and or allege facts that would shock the conscience. So to answer your question, I think you have to do your due diligence in knowing what happened and not just blanketly stating this was deliberate indifference. This shocked the conscience simply because he was speeding. Because of the speeding, he got over into the other lane unintentionally. Can I ask you a follow-up to that? Because the standard is pretty hard, right? Subjectively, it's not enough that the state actor knows the danger. Rather, the plaintiff has to demonstrate that the defendant had actual knowledge of the impending harm and consciously basically disregarded it. How do you do that if both people die? I mean, how can the plaintiff ever prove a claim like this under that? Your Honor, it has to be—that's basically the point. I mean, it is very difficult. The court does not want—the Supreme Court and this court have followed— they don't want these car wreck claims turning into constitutional claims. It has to be completely egregious facts, and to do that, it would take the investigation, and it would be something so obvious, maybe not all the way to the intent to harm end, but it would be something that's, as the court said, arbitrary in the constitutional sense. I think that's out of time. Yes, right. Everybody's been out of time. Yes. So maybe that says something about me. Thank you. Your Honor, opposing counsel seems to be urging this court to adopt an intent to harm standard, which is essentially what the district court did, and respectfully, that's not what the Supreme Court in Lewis said we were required to prove. Lewis specifically acknowledges that there's middle ground cases, and he says, well, the courts have made it clear that they don't want these car wreck cases turning into constitutional claims. There are several examples of car wreck cases that have been held to— where the conduct has been so egregious that the courts have held— Any with as little facts as this, because, like, Browder was pretty egregious, right, and some of those other ones were pretty egregious, but the two he cites, Hill and the Texas case, sounds like closer to this one, neither court found it satisfied, the 14th Amendment. So I guess, do you have any that are closer? Your Honor, I think Servant is probably the closest one to this case. Can you remind me which is that? Your Honor, that's the one from the District of Connecticut. Oh, District Court. Okay, go ahead. In that case, there was a non-emergency call. The court found that the officer had ample time for reflection about how he would drive, and he was speeding, and he ran a red light. It was alleged that he was speeding 95 miles an hour, right? He was, but, Your Honor, in Browder, he was only going 66, or an average of 66. Right, but for 8.8 miles, through 10 red lights. I mean, that's pretty excessive in Browder. That is excessive, but he had his flasher zone, which is a fact that we don't have here. I want to ask a question relating to something Judge Moore asked, or I think was alluding to. If this case went forward, I know this is not in the record, but what other evidence is there that you could obtain, that you all would seek? Are there any reports that have not been released by the coroner, or anything else that you don't have at this point? No, Your Honor, the reports are very thin. All we have is something from the Tennessee Highway Patrol. Honestly, if it were not for my investigator, we wouldn't even know that he was responding to a non-emergency call. There's only so much that a plaintiff can be expected to uncover without the benefit of discovery. So what additional proof would you seek if this case goes forward? We would like to ask the fire chief about the specifics of his radio announcement, exactly what he said regarding how under control the fire was, whether it was necessary that Durham even go to the scene. That wasn't recorded? No, Your Honor. We would like to ask about the route of travel. Was it necessary for him to drive this large truck on such a narrow, winding, curvy road? You could look at a map and see, right? I mean, there were alternative routes. There were. We've done that, and it does appear that there were alternative routes, Your Honor. But we would like to ask if there was a history of this. And that relates more to the Monell claims of Mr. Loesleblen driving in a reckless manner, of him responding to non-emergency calls. He was a volunteer firefighter. His training we haven't been able to delve into. There are lots of facts that we'd like to uncover through discovery that we haven't had the opportunity to do. Your Honor, I'd like to point out the district court relied heavily on the Tenth Circuit case of Green v. Post. And it's an opposite, Your Honors. In Green, the police officer had a yellow light, so he still had the right-of-way. And he was following up on a suspect who had allegedly stolen gas. So he was pursuing a suspect through a yellow light. He had the right-of-way. I'm not sure that's even negligent. So I don't think that you can compare the facts of Green in the Tenth Circuit case with those here. I think the Browder Tenth Circuit case is much more on point with the facts we have here. And, again, Servin from the District of Connecticut and the Second Circuit case of Pena as well. And, Your Honor, the district court also cited Hill v. Shobie. And in that case, I just think the Seventh Circuit got that wrong based on the facts. Those are facts that are very similar to what the Tenth Circuit was presented with in Browder and what the District of Connecticut was presented with in Servin. Excessive speed, running a red light. They just reached a different result. And I think they did what the district court did here and required proof of intent to harm. And, respectfully, Your Honor, I don't believe that's the standard. Thank you very much. Thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?